# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

RIVERA L. PEOPLES,       )
                         )

   Petitioner,          )
                         )

v.                            )      **Case No. 3:15-cv-00666**
                         )      **Judge Aleta A. Trauger**

JOHNNY FITZ, Warden,[1]    )      **Magistrate Judge Jeffrey S. Frensley**
                         )

   Respondent.        )

## MEMORANDUM

Magistrate Judge Jeffrey Frensley has filed a Report and Recommendation ("R&R") (Doc. No. 34), which recommends that petitioner Rivera Peoples' Amended Petition and Supplemental Amended Petition (Doc. No. 19), seeking relief under 28 U.S.C. § 2254, be denied in its entirety and dismissed with prejudice. Now before the court are the petitioner's Amended Objections (Doc. No. 46), the petitioner's *pro se* Motion for Leave to File *Pro Se* Supplemental Objection (Doc. No. 49), and the proposed Supplemental Objection (Doc. No. 49-1). The Warden has also filed Objections (Doc. No. 45), challenging the Magistrate Judge's finding that two of the claims in the Amended Petition relate back to claims raised in the original petition and are therefore timely (even though the Magistrate Judge recommends denying relief on the merits of these claims). The respondent also filed a Response to the petitioner's Amended Objections. (Doc. No. 47.)

---

[1] The petitioner's recent *pro se* filing and a search of the Tennessee Department of Correction Felony Offender information website both reflect that Peoples is now incarcerated at the West Tennessee State Penitentiary ("WTSP"). (*See* Doc. No. 49, at 2.) The proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* 28 U.S.C. § 2243. The prisoner's immediate physical custodian is the warden of the facility where the prisoner is being held. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) (citing *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). Accordingly, WTSP Warden Johnny Fitz is automatically substituted as the appropriate defendant in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

As an initial matter, the Sixth Circuit has recognized that a "habeas petitioner has neither a constitutional right nor a statutory right to hybrid representation." *Miller v. United States*, 561 F. App'x 485, 489 (6th Cir. 2014) (citing 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases *personally or by counsel* . . . ." (emphasis added))). At the same time, a federal court has "broad discretion to determine who practices before it" and "may consider a *pro se* petition even when a habeas petitioner is represented by counsel." *Id.* Accordingly, the court will grant the Motion for Leave and, to the extent the petitioner's Supplemental Objections are not duplicative of the Objections raised by counsel, will exercise its discretion to consider the *pro se* Supplemental Objections.

However, as set forth herein, the petitioner's Amended Objections and Supplemental Objections will be overruled, and the respondent's Objections will be granted. The R&R will be accepted, insofar as it recommends that relief be denied. Both the original and Amended Petitions under § 2254 (Doc. Nos. 1 and 19) will be denied, and this case will be dismissed.

## I.    BACKGROUND

Petitioner Peoples, a prisoner in state custody, was convicted of first-degree felony murder and received an automatic life sentence after a jury trial in 2010. His conviction and sentence were affirmed on direct appeal. *State v. Peoples* ("*Peoples I*"), No. M2010-02162-CCA-R3-CD, 2012 WL 2356584 (Tenn. Ct. Crim. App. June 20, 2012). His subsequent petitions for post-conviction relief and for the writ of error *coram nobis* were denied, and those decisions were likewise affirmed. *Peoples v. State* ("*Peoples II*"), No. M2014-02139-CCA-R3-PC, 2017 WL 65634, at *14 (Tenn. Crim. App. Jan. 6, 2017).

Peoples filed a premature *pro se* Petition under 28 U.S.C. § 2254 in this court in June 2015, while his state court post-conviction proceedings were still in progress. (*See* Doc. No. 1, at 4.)

Senior Judge William J. Haynes, rather than dismissing the petition without prejudice, granted the petitioner's motion for abeyance and directed the Clerk to administratively close the case in August 2015, pending reopening by either party upon the termination of the state proceedings. (Doc. No. 7.)

The original Petition sets forth four "grounds" for relief:

(1) that the evidence was insufficient to support the verdict, specifically, that there was "no underlying felony to support felony murder conviction" (Doc. No. 1, at 5);

(2) that the petitioner had ineffective assistance of counsel, thus denying him the "right to [a] fair trial" "for several reasons"—all of which "were fully exhausted (still pending in [Criminal Court of Appeals])" and should be held in abeyance pending resolution (*id.* at 6, 7);

(3) that counsel "failed to subject the prosecution's case to meaning[ful] adversarial testing on several areas," specifically, that counsel's "decision to pursue an abandonment defense thereby conceding—in front of the jury—that petitioner was in an automobile near the crime . . . was unreasonable and prejudicial" and that trial counsel was further deficient "when he failed to hire an expert to rebut the state's expert witness false testimony concerning cell towers, and phone signals" (*id.* at 8); and

(4) that the petitioner was "denied the fundamental right to dispense with the services of trial counsel" (*id.* at 10).

The opinion of the Tennessee Court of Criminal Appeals, denying relief, was filed on January 6, 2017. The petitioner's application for permission to appeal was dismissed as untimely by the Tennessee Supreme Court on June 28, 2018. Order, *Peoples v. State*, No. M2014-02139-SC-R11-PC (Tenn. June 28, 2018). Peoples filed a "Status Report" in this court on December 23, 2019, referring to a state habeas corpus petition and "Rule 36.1 motion" that were still pending in the Tennessee Court of Criminal Appeals. (Doc. No. 11.) Counsel for Peoples entered an appearance on October 13, 2020 (Doc. No. 13), and, on March 1, 2021, Peoples, through counsel, filed a Motion to Reopen Case and Motion to Amend Petition. (Doc. Nos. 15, 16.) The case was reassigned to the undersigned due to Judge Haynes' retirement, and the court granted both motions.

The petitioner's Amended and Supplemental Petition with Memorandum of Law ("Amended Petition") was filed on July 15, 2021. (Doc. No. 19.) The Warden filed a Response in opposition to the Amended Petition, and Peoples filed a Reply. (Doc. Nos. 27, 32.) The matter was referred to the Magistrate Judge to issue a report and recommendation, and the Magistrate Judge has now done so. The R&R sets out in detail the facts underlying the conviction, as summarized the Tennessee Court of Criminal Appeals on direct review. The court incorporates those facts and presumes familiarity therewith. The R&R also addresses each of the eight grounds for relief articulated in the Amended Petition and recommends that relief be denied as to each. The eight amended grounds addressed by the Magistrate Judge's recommended ruling are as follows.

Amended Ground One asserts that "Petitioner's trial counsel was ineffective by failing to meet with him pretrial in person outside the confines of the courthouse lock-up in order to prepare a trial defense." (Doc. No. 19, at 5.) Citing Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, the R&R finds that Ground One does not "relate back" to Ground Three ("*pro se* Ground Three") in the original Petition or to any other claim asserted in the original Petition and is therefore untimely and cannot be considered on the merits. (Doc. No. 34, at 29.)

Amended Ground Two asserts that "Petitioner's trial counsel was ineffective by failing to advise him on his right to testify or not testify at trial, and the risks involved in waiving his right against self-incrimination in testifying, so that Peoples could make an informed decision." (Doc. No. 19, at 5.) The R&R finds that this claim "arguably relates back" (Doc. No. 34, at 29) but was not exhausted at the state court level and, therefore, is procedurally defaulted (*id.* at 32). The R&R also finds that the petitioner has not established that the procedural default is excused under *United States v. Cronic*, 466 U.S. 648 (1984), and that, even if the court presumes prejudice based on *Cronic*, the petitioner has not established that trial counsel was not "functioning as 'counsel'

guaranteed by the Sixth Amendment." (Doc. No. 34, at 36 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).)

Amended Ground Three asserts that "Petitioner's trial counsel was ineffective by failing to prepare and conduct adequate and meaningful cross examinations of government witnesses." (Doc. No. 19, at 5.) The R&R finds that this claim does not relate back to the ineffective assistance claims in the original Petition and cannot be considered on the merits. (Doc. No. 34, at 30.) It also finds that the claim was not fully exhausted in the state courts, as it was not raised until the post-conviction appeal, and the appellate court refused to consider the claim on the merits. *See Peoples v. Tennessee*, No. M2014-02139-CCA-R3-PC, 2017 WL 65634, at *12 (Tenn. Crim. App. Jan. 6, 2017). The R&R further finds no grounds for excusing the procedural default, again because *Cronic* does not supply the appropriate standard.

Amended Ground Four asserts that "Petitioner's trial counsel violated Peoples' protected autonomy right by overriding Peoples' desired defense objective of challenging the Government's evidence on the elements of felony murder in favor of exclusively focusing on an abandonment defense over Peoples' expressed objections." (Doc. No. 19, at 5.) The R&R finds that this claim "clearly . . . relates back" and, moreover, that it was fully exhausted in the state courts. (Doc. No. 34, at 30–31, 37.) The Magistrate Judge finds that the petitioner is not entitled to relief on the merits of this claim, because the case he cites, *McCoy v. Louisiana*, 584 U.S. 414, 426 (2018), does not apply retroactively and would not provide relief even if it did. (Doc. No. 34, at 38.)

Amended Ground Five states that "[t]he trial court failed to allow Mr. Peoples to terminate the representation of trial counsel when it was clear at trial that there was a substantial lack of communication and conflict between counsel and defendant on defense strategy." (Doc. No. 19, at 5.) The claim is timely, as it is "nearly identical" to *pro se* Ground Four. (Doc. No. 34, at 26.) However, this issue was not fully exhausted in the state court, as it was not raised until the

petitioner's post-conviction appeal, and the Tennessee Court of Criminal Appeals declined to consider it. (*Id.* at 39.) The R&R also finds that this claim would fail on the merits even if it had been exhausted, as the petitioner did not "clearly and unequivocally" declare that he wanted to proceed *pro se* when he was given the opportunity to explain to the trial court why he was having issues with his attorney. (*Id.* at 40 (quoting *Faretta v. Cal*, 422 U.S. 806, 835–36 (1975)).)

Amended Ground Six states: "Trial counsel failed to challenge admissibility of cell tower evidence." (Doc. No. 19, at 5.) The R&R finds that this claim "partially relates back," as it elaborates on part of *pro se* Ground Three, insofar as the original Petition cites trial counsel's failure to call an "expert" to challenge the state's cell phone tower evidence. (Doc. No. 34, at 31.) However, insofar as the petitioner now argues in support of this claim that the state's expert should never have been qualified to testify as an expert and that the cell phone location evidence violated the petitioner's Fourth Amendment rights (and, presumably, that counsel was ineffective for failing to raise these arguments) (*see* Doc. No. 19, at 15), the claim does not relate back and is partially time-barred (Doc. No. 34, at 31). With respect to that part of the claim that does relate back, the R&R observes that the claim based on "trial counsel's failure to procure and call a rebuttal expert to counter the state's cell phone evidence was considered waived by the Tennessee Court of Criminal Appeals as it was 'raised for the first time on appeal.'" (Doc. No. 34, at 41 (quoting *Peoples II*, 2017 WL 65634, at *12).) As a result, the claim is procedurally defaulted, and the Magistrate Judge finds no basis for excusing the procedural default. (*Id.*)

Amended Ground Seven asserts that "[t]rial counsel failed to investigate potential favorable witnesses and communicate with Peoples regarding their potential testimony at trial." (Doc. No. 19, at 5.) The R&R finds that this claim does not relate back and cannot be considered on the merits. (Doc. No. 34, at 31, 32.)

Ground Eight states simply, "Sufficiency of the Evidence." (Doc. No. 19, at 5.) The R&R concludes that this claim is basically identical to *pro se* Ground One and, therefore, relates back. (Doc. No. 34, at 26.) The R&R also finds that this claim was fully exhausted in the state courts. (*Id.* at 42.) However, the Magistrate Judge finds that the evidence to convict the petitioner was clearly sufficient and that the state court did not commit error of a constitutional magnitude in reaching the same conclusion. (*Id.*)

## II.     THE OBJECTIONS

### A.     The Petitioner's Objections

The petitioner, through counsel, filed timely Objections (Doc. No. 43) and then Amended Objections (Doc. No, 46), which are expressly intended to supersede the first set of Objections (Doc. No. 46, at 1 n.1). The Objections filed by counsel assert that:

> (1) the Magistrate Judge "erred in finding that Peoples' claim to the right to autonomy (Amended Ground 4) in determining a defense goal that did not effectively concede guilt is without merit";
>
> (2) the Magistrate Judge "erred in finding that Amended Grounds (1), (3), (6) (admissibility of cell phone tower evidence), and (7) are procedurally defaulted and do not relate back to the original petition";
>
> (3) the Magistrate Judge "erred in finding that Amended Ground (2) that trial counsel failed to advise Peoples on the risks and contours of exercising his right to testify at trial did not constitute a valid ineffective assistance of counsel claim"; and
>
> (4) "the equitable tolling doctrine should apply to any defaulted claims."

(*Id.* at 1.)

In a *pro se* filing, the petitioner now asserts that his attorney, despite agreeing to do so, failed to include in the Amended Objections all of the objections that the petitioner sought to raise. (*See* Doc. No. 49.) In his *pro se* Supplemental Objection, the petitioner adds the following objections, some of which overlap with those raised on his behalf by counsel:

(1) The Magistrate Judge erred in concluding that Amended Grounds 1, 3, and 7 do not relate back and, even if they do not relate back, they "can be rescued under the Equitable tolling doctrine," the "Miscarriage of justice doctrine," and the "Cause and Prejudice Excuse" (Doc. No. 49-1, at 1);

(2) The procedural default of Ground Two is excused by the ineffective assistance of post-conviction counsel; the petitioner can establish both cause and prejudice to excuse this default, based on *Cronic*, and if relief on this claim is denied, "Petitioner would be further prejudiced under the 5th, 6th, and 14th Amendments to the U.S. Const[itution]" (*Id.* at 12, 15);

(3) The petitioner is entitled to relief on Ground Three, which the Magistrate Judge found to be time-barred and procedurally defaulted, because (a) equitable tolling should apply; (b) the issue was fully exhausted in the state courts, as it was the subject of the petitioner's Petition for writ of error coram nobis and consolidated with the post-conviction proceeding on appeal; (c) the petitioner can establish that he is entitled to relief on the merits under *Strickland*; and (d) he is entitled to a presumption of prejudice under *Cronic* (*Id.* at 15–16);

(4) The Magistrate Judge erred in finding, with respect to Ground Four, that *McCoy v. Louisiana* would not apply, because the petitioner and his attorney were pursuing fundamentally different goals and were not merely having a strategic dispute (*Id.* at 17);

(5) The procedural default of Ground Six (trial counsel's failure to call a rebuttal expert witness) (the petitioner erroneously refers to this as Ground Five) should be excused under *Coleman v. Thompson*, 501 U.S. 722 (1991), and *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014), and he is entitled to relief on the merits, because he was clearly prejudiced by counsel's error (Doc. No. 49-1, at 17–18);

(6) According to the petitioner, the Magistrate Judge mistakenly misnumbered and failed to address his failure to investigate claim (amended Ground Seven) on the merits. (*Id.* at 19.) In

fact, the R&R finds that this claim does not relate back and cannot be considered on the merits. (Doc. No. 34, at 31, 32.) The petitioner argues that (a) the Magistrate Judge erred in finding that the claim does not relate back; (b) if the claim is time-barred, then the doctrines of equitable tolling, miscarriage of justice, and "cause-prejudice excuse" apply; (c) if the claim is procedurally defaulted, the default should be excused under *Coleman* and *Sutton*; and (d) the petitioner was prejudiced by this failure, as counsel failed to investigate witnesses who could have proved his innocence at trial. (Doc. No. 49-1, at 20.)

(11) The petitioner's claim based on the trial court's failure to allow him to terminate his trial counsel (Amended Ground Five, *see* Doc. No. 19, at 5) "has merit under the 6th Amendment." (Doc. No. 49-1, at 20.) Contrary to the petitioner's understanding, the R&R finds that this claim relates back but that it was not fully exhausted in the state court and is therefore procedurally defaulted and, in any event, would fail on the merits. (Doc. No. 34, at 39–40.) The petitioner argues that the default should be excused due to the ineffective assistance of post-conviction counsel and that he was clearly prejudiced by this deprivation of his Sixth Amendment rights when the trial court refused to allow him to terminate his trial attorney.

(12) The Magistrate Judge erred in finding that the petitioner was not entitled to relief on Ground Eight, sufficiency of the evidence, because "Petitioner's car was driven by someone else, Petitioner's phone was used by someone else at the time of alleged robbery and shooting, and Petitioner did not tell C. Waters that he and other three went to the store that evening with the purpose of robbing it." (Doc. No. 49-1, at 22.) In addition, according to the petitioner, C. Waters' testimony was unreliable for a number of reasons, as a result of which "any rational trier of fact could not find Petitioner guilty beyond a reasonable doubt." (*Id.*)

### B.    The Warden's Objections

The respondent raises two objections to the R&R. First, he contends that the Magistrate Judge erred in (1) finding that Ground Two in the Amended Petition relates back to *pro se* Ground Three in the original Petition; and (2) finding that the "sufficiency of the evidence" claim in Ground Eight of the Amended Petition relates back to the sufficiency of the evidence claim in *pro se* Ground One.

## III.    STANDARD OF REVIEW

When a party files timely objections to a magistrate judge's ruling on a dispositive matter, such as this one, the district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b) (3); 28 U.S.C. § 636(b)(1)(B) & (C). An objection is "properly" made if it is sufficiently specific to "enable[ ] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). However, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## IV.    DISCUSSION

### A.    Timeliness and the Relation-Back Doctrine

Petitions under 28 U.S.C. § 2254 are subject to a one-year statute of limitations. 28 U.S.C.A. § 2244(d)(1); *Mayle v. Felix*, 545 U.S. 644, 648 (2005). As relevant to this case, the limitation period for Peoples' claims began running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review,"

except that the limitations period is tolled during the pendency of any state petition for post-conviction or other collateral review. *Id.* § 2244(d)(1)(A), (d)(2); *Lawrence v. Florida*, 549 U.S. 327, 331 (2007).

By statute, a habeas petition "may be amended . . . . as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The Supreme Court has held, based on § 2242, that Rule 15 of the Federal Rules of Civil Procedure applies to habeas petitions. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). That rule instructs: "An amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. Rule Civ. Proc. 15(c)(2). Under this rule, when a state prisoner files a timely habeas petition in federal court within the limitations period but then amends (or seeks to amend) the petition after the one-year statute of limitations has expired, the claims in the amended petition will be considered timely only if they "relate[] back to the date" of the original petition—that is, if the new claims arise from the same "conduct, transaction, or occurrence" as the old ones. *Watkins v. Stephenson* ("*Watkins II*"), 57 F.4th 576, 577 (6th Cir.), *cert. denied sub nom. Watkins v. Chapman*, 144 S. Ct. 222 (2023).

The Supreme Court has interpreted the phrase "conduct, transaction, or occurrence" narrowly in the habeas context. *Id.* at 581 (citing *Mayle*, 545 U.S. at 656–64). In *Mayle*, the petitioner's timely original petition contained a claim alleging that the "admission into evidence of videotaped testimony of a witness for the prosecution violated [the petitioner's] rights under the Sixth Amendment's Confrontation Clause." *Mayle*, 545 U.S. at 648. His untimely amended petition alleged that, "in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination." *Id.* at 649. In other words, the two claims relied

on different facts and "targeted separate episodes"—the pretrial interrogation of the witness, and the petitioner's own interrogation, which occurred "at a different time and place." *Id.* at 660.

Emphasizing that, under the Rules Governing § 2254 Cases (unlike under Rule 8 of the Federal Rules of Civil Procedure), a petitioner must specify all grounds for relief and state the facts supporting each ground, the Court found that the untimely claim did not relate back to the timely claim. *Id.* at 649, 655, 661 (citing Rule 2(c), Rules Gov'g § 2254 Cases). It held that a habeas petition does not relate back to the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650; *see id.* at 661 ("Under [Rule 2(c) of the Rules Governing § 2254 Cases], [the petitioner's] Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an 'occurrence.'"). In other words, to qualify for relation back, the amended and original petitions must "state claims that are tied to a common core of operative facts." *Id.* at 664.

*Mayle* provided additional guidance for applying the relation-back doctrine, citing two decisions from other circuits as examples of proper application. *Id.* at 664 n.7 (citing *Mandacina v. United States*, 328 F.3d 995 (8th Cir. 2003); *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)). In *Mandacina*, the original petition generally alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and the amended petition alleged more specifically the government's failure to disclose a particular report. *Mandacina*, 328 F.3d at 1000–01. The Court in *Mayle* agreed that relation-back was appropriate, as both claims arose from "evidence obtained at the same time by the same police department." *Mayle*, 45 U.S. at 664 n.7. Likewise, in *Woodward*, relation back was properly found where the original petition challenged the trial court's admission of recanted statements and the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted, as the amendment "simply clarifie[d] or amplifie[d] a claim

or theory in the original petition, and therefore relate[d] back to the date of the original petition." *Woodward*, 263 F.3d at 1142.

Similarly, the Sixth Circuit has found that an amended ineffective-assistance claim alleging that counsel had failed to interview *specific witnesses* related back to an original ineffective-assistance claim alleging more generally that counsel had "failed to investigate" and find "witnesses [who] would have supported" the defense, because the amended claim "merely added more detail" to the original. *Cowan*, 645 F.3d 815, 819. Conversely, the court found that an amended ineffective assistance claim that counsel wrongly failed to request another competency evaluation did not relate back to a claim in the original petition that counsel was ineffective for failing "to investigate and raise a defense." *Watkins v. Deangelo-Kipp* ("*Watkins I*"), 854 F.3d 846, 850 (6th Cir. 2017). Even though both alleged ineffective assistance of counsel, they did not "rely on the same common core of operative fact" and "target[ed] separate episodes." *Id.*; *see also United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016) (claim that appellate counsel was ineffective for not challenging the drug amounts used to calculate the petitioner's base offense level "was an entirely new claim" and did not relate back to a timely claim that appellate counsel was ineffective for not challenging the petitioner's career offender enhancement); *Evans v. United States*, 284 F. App'x 304, 305, 313 (6th Cir. 2008) (the claim in the amended petition that trial counsel gave petitioner incorrect advice regarding the sentence he would receive through a plea agreement versus after trial did not relate back to his timely petition raising ineffective assistance of counsel for failure to pursue a particular avenue of impeachment).

In this case, Peoples' original *pro se* Petition, filed in 2015 while his post-conviction proceeding was still making its way through the state courts, was clearly timely. His Amended Petition, filed in July 2021—more than four years after the Tennessee Court of Criminal Appeals' decision denying post-conviction relief became final—was filed well outside the limitations

period, however it is calculated.[2] Accordingly, the claims in the Amended Petition are untimely unless they relate back to the original Petition, under Rule 15(c).

After the Warden raised the issue of timeliness in his Response to the Amended Petition, the Petitioner addressed the issue in his Reply, arguing that all of the claims of ineffective assistance of counsel related back, as the "gravamen of Petitioner Peoples' complaint is that his counsel abandoned him at all critical stages; both the pretrial and trial stages." (Doc. No. 32, at 2.) As set forth above, the R&R finds that many of the new claims are untimely.

Neither party raises objections to the R&R's finding that amended Ground Four relates back to *pro se* Ground Three, both of which allege that counsel was ineffective for overriding the petitioner's desired defense strategy and unilaterally pursuing an abandonment defense. The parties also apparently agree that amended Ground Five relates back to *pro se* Ground Four, alleging the denial of the petitioner's right to fire his trial counsel. However, the petitioner objects to the Magistrate Judge's finding that amended Grounds One, Three, Six (in part), and Seven do *not* relate back. The Warden objects to the Magistrate Judge's finding that amended Grounds Two and Eight *do* relate back. The court considers *de novo* whether these claims relate back.

_____

[2] The petitioner's conviction became final in August 2012, but he waited nearly nine months to file his state post-conviction petition in May 2013. The Tennessee Court of Criminal Appeals issued its opinion affirming the denial of post-conviction relief on January 6, 2017. The Tennessee Rules of Appellate Procedure require an application for permission to appeal to the Tennessee Supreme Court to be filed within 60 days after the entry of the judgment the applicant seeks to appeal, Tenn. R. App. P. 11(b), making Peoples' petition due no later than March 7, 2017. Based on these dates, the Warden calculates the filing deadline for the federal habeas petition to have expired on June 28, 2017. (Doc. No. 27, at 25.)

The Tennessee Court of Appeals' public docket reflects that Peoples filed an untimely Rule 11 application for permission to appeal. The Tennessee Supreme Court declined to waive the untimeliness and dismissed the application on June 28, 2018. *See* Order, *Peoples v. State*, No. M2014-02139-SC-R11-PC (Tenn. June 28, 2018) (in this court's record at Doc. No. 25-24). Even if this court considered the limitations period to be tolled until June 28, 2018 (rather than until March 7, 2017), the filing deadline would still have expired in October 2018, at the very latest.

1. *Amended Ground One*

This claim asserts very specifically that counsel was ineffective for failing to meet with the petitioner in person outside the confines of the courthouse lock-up in order to prepare a trial defense. (Doc. No. 19, at 5.) It expressly pertains to the "lack of pretrial contact" during the "pretrial critical stage of proceedings." (*Id.* at 8, 7.) This claim is not among those identified in Count Three of the original Petition, which, as discussed below, relates to specific attorney conduct that occurred at trial. *Pro se* Ground Two asserts very broadly that counsel was "ineffective . . . for several reasons," thus denying the petitioner the "right to [a] fair trial," but the only "fact" alleged in support of this claim is that trial counsel failed to provide "competent representation." (Doc. No. 1, at 6.) This is not a situation in which the claim in an untimely petition incorporates more detail simply to clarify a claim in a timely petition. The two claims relate to different "episodes": pretrial communication and performance at trial.

Count One in the Amended Petition, in short, does not relate back and is not timely.

2. *Amended Count Two*

This claim asserts that counsel was ineffective for failing to adequately advise the petitioner regarding his right to testify or not testify at trial and the risks involved in waiving his right against self-incrimination, so that Peoples could make a fully informed decision whether to testify. This claim, like Count One, pertains to pretrial preparation and arguably falls within the scope of harm caused by counsel's alleged failure to meet with his client before trial, as alleged in amended Ground One. The petitioner himself frames the claim thus:

> For the reasons stated above, trial counsel's failure to meet with client and counsel him in the pretrial stages left Peoples effectively without counsel. Peoples elected to testify at trial and trial counsel either knew or should have known that Peoples would be impeached with prior inconsistent statements. In a first-degree felony murder trial, it was incumbent on trial counsel to meet in person with Peoples *in advance of trial* to counsel him regarding his potential waiver of his Fifth

Amendment privileges against self-incrimination so that he could make an informed decision on whether or not to testify at trial.

. . . .

If counsel had met with Peoples at the jail and interviewed him, he would have adequate time to counsel him regarding his right to testify. Furthermore, counsel would have had a clear picture of Peoples' thoughts, concerns and factual version of events *well in advance of trial*.

(Doc. No. 19, at 8 (emphasis added).)

Like amended Ground One, this claim is not among those identified in *pro se* Ground Three, which concern counsel's trial performance, and *pro se* Ground Two, again, alleges broadly only that counsel's ineffective assistance deprived the petitioner of the right to a fair trial, without setting forth any supporting facts.

Despite the petitioner's framing this issue as based on counsel's failure to meet with and advise his client during the pretrial stage, the R&R finds that this claim could be interpreted to refer to the trial phase and that it "arguably adds detail as to how trial counsel failed to sufficiently challenge the state's evidence." (Doc. No. 34, at 29–30.) The Magistrate Judge clearly—and understandably—is attempting to give the petitioner every benefit of the doubt, particularly because the original Petition was filed *pro se*. However, even when an original habeas petition is filed *pro se*, the Sixth Circuit has repeatedly construed the Supreme Court's opinion in *Mayle* as "narrowly interpret[ing] the phrase 'conduct, transaction, or occurrence' in this habeas context." *Watkins II*, 57 F.4th at 581 (citing *Pinchon v. Myers*, 615 F.3d 631, 642 (6th Cir. 2010)). Here, the claim that counsel was ineffective for failing to meet with his client prior to trial in order to advise him of the advantages and real risks of testifying at trial—and, if he was inclined to testify anyway, to adequately prepare him—does not simply clarify and add detail to the very broad assertion that counsel was ineffective at trial. The events are based on different episodes, and, more importantly, *pro se* Ground Two is so entirely devoid of supporting facts that no amended claim could relate

back to it. The Sixth Circuit has recognized that a "catch-all" claim effectively states no claim at all. *See Hill v. Mitchell*, 842 F.3d 910, 925 (6th Cir. 2016) ("[I]f a catch-all *Brady* claim, devoid of *Brady* material or specific factual allegations, were sufficient to justify relation back under Rule 15(c), then habeas petitioners could routinely circumvent AEDPA's statute of limitations on *Brady* claims [simply by] includ[ing] a catch-all *Brady* claim in his original petition . . . .").

Amended Ground Two, therefore, does not relate back and is not timely.

### 3. *Amended Ground Three*

This claim asserts that trial counsel failed to "prepare and conduct adequate and meaningful cross-examination of government witnesses." (Doc. No. 19, at 5.) The argument in support of this claim asserts that the "state's witnesses . . . had issues of credibility due to bias, prior inconsistent statements and/or prior convictions." (Doc. No. 19, at 11.) The petitioner identifies several witnesses counsel allegedly did not adequately cross-examine, including Brian Moreland, an accomplice whom counsel should have asked about inconsistent statements he made to another individual, and Detective Weaver, whom counsel should have questioned about what Moreland told her. (*Id.* at 11, 12.)

The R&R finds that this claim does not relate back, focusing on the "prepare" aspect of the claim to conclude that it relates to trial preparation rather that trial performance and, therefore, pertains to a different "episode" in the criminal proceedings. (Doc. No. 34, at 30.) Even though the claim states that counsel failed to "prepare and conduct" adequate cross-examinations, the R&R concludes that the failure to "conduct" arose from the pretrial failure to "prepare" and, therefore, that the claim did not relate back to the *pro se* ineffective claims relating to trial performance. (*Id.*)

This court finds that the petitioner's allegation that counsel did not adequately prepare *or* conduct adequate cross-examinations actually gives rise to two distinct claims, one relating to

pretrial conduct and one relating to trial performance. This interpretation is substantiated by the petitioner's elaboration on the claim, which focuses on caselaw pertaining to the Sixth Amendment right to cross-examine the government's witnesses and the Supreme Court's recognition of "the critical due process rights to a fair trial that are protected through effective cross-examination." (Doc. No. 19, at 10 (citing *Davis v. Alaska*, 415 U.S. 308, 306–17 (1974)).) The petitioner argues, in light of this precedent, that trial counsel was constitutionally ineffective for failing to "develop the testimony [of the government's witnesses] to expose the jury to [known] credibility issues" by performing only "perfunctory" cross-examinations. (*Id.* at 11.)

That is, the claim clearly relates to counsel's trial performance as well as his failure to prepare prior to trial. And an alleged failure to adequately *conduct* cross-examination amounts to a failure to subject the government's case to "meaningful adversarial testing" during the trial phase, which is what *pro se* Ground Three alleges. That *pro se* claim, however, is based on specific facts: (1) that counsel unilaterally chose to "pursue an abandonment defense thereby conceding—in front of the jury—that petitioner was in an automobile near the crime during the felony/murder"; and (2) that counsel "failed to hire an expert to rebut the state's expert witness['s] false testimony concerning cell towers, and phone signals." (Doc. No. 1, at 8.) Thus, the claim that counsel failed to adequately cross-examine the state's witnesses does not relate back to *pro se* Ground Three, because the claims are not "tied to a common core of operative facts." *Mayle*, 45 U.S. at 664.

It does relate to the same *episode* as *pro se* Ground Two—which, as set forth above, asserts that counsel's incompetent representation denied the petitioner the right to a fair trial (*see* Doc. No. 1, at 6)—and could be deemed to provide clarifying details to the timely claim. Again, however, the petitioner is stuck with his decision not to provide *any* facts to support *pro se* Ground Two. If, for example, the petitioner had alleged in his *pro se* Petition that counsel failed to adequately question witnesses at trial but then added, in the Amended Petition, the names of the

witnesses who were not adequately cross-examined and the questions counsel should have asked, the court would likely find relation back. Here, because the original Petition is devoid of facts, the court cannot determine that the *pro se* claim and the amended claim share any facts. *Accord Hill*, 842 F.3d at 925 (finding that a claim in the petitioner's amended petition could not be "deemed to share a 'common core of operative facts'" with a particular claim in his original petition, because the original claim "alleged no operative facts out of which the amended claim could also be deemed to have arisen" (quoting *Mayle*, 545 U.S. at 650)).

Accordingly, amended Ground Three does not relate back either to *pro se* Ground Two or *pro se* Ground Three and is not timely.

### 4. Amended Ground Six

Ground Six in the Amended Petition states simply that counsel "failed to challenge admissibility of cell tower evidence." (Doc. No. 19, at 5.) The government's cell tower evidence was used to identify the petitioner's approximate location at the time of the crime of conviction. *See State v. Peoples*, No. M2010-02162-CCA-R3CD, 2012 WL 2356584, at *5 (Tenn. Ct. Crim. App. June 20, 2012). In support of this claim, the petitioner asserts both that trial counsel failed to "challenge cell tower evidence and/or to present rebuttal expert evidence on cell phone tower evidence. (*Id.* at 14.) He argues with greater particularity that trial counsel was ineffective for failing to object to testimony offered by a Cricket employee that "the co-conspirators' telephone numbers matched up with cell phone towers in the vicinity of the crimes" or to "expert testimony" offered by a law enforcement officer "regarding the significance of this location data without ever being qualified as an expert." (*Id.* at 14–15.) He also asserts that the introduction of cell phone evidence violated his Fourth Amendment right to protection from unreasonable searches. (*Id.* at 15 (citing *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018)).)

The claim that counsel was ineffective for failing to call a rebuttal expert witness clearly relates back to the second part of *pro se* Ground Three, which alleges that counsel failed to hire an expert to rebut the state's expert on cell tower signals. (Doc. No. 1, at 8.) The question is whether the second part of amended Ground Six also relates back. The court finds that it does, at least arguably, as this part of the claim concerns the same episode and the same core facts, insofar as both the *pro se* claim and the amended claim assert that counsel was ineffective for failing to adequately challenge the government's cell phone tower evidence. The amended claim raises a different theory as to how exactly trial counsel was ineffective in dealing with the government's cell phone tower evidence, but a different theory is not necessarily fatal to the relation-back analysis. *See Mayle*, 545 U.S. at 664 n.7 (citing approvingly Moore's Federal Practice for the principal that "relation back [is] ordinarily allowed 'when the new claim is based on the same facts as the original pleading and *only changes the legal theory*'" (citing 3 James Moore, et al., Moore's Federal Practice § 15.19[2], pp. 15–18 (3d ed. 2004)) (emphasis added)).

The court finds that Ground Six relates back and is therefore timely.

### 5.    *Amended Ground Seven*

This claim asserts that counsel failed to investigate potentially favorable witnesses and to discuss their potential testimony with the petitioner *prior to trial*. (Doc. No. 19, at 5; *see id.* at 15 ("Trial counsel [is accorded] much deference as to judgments made in investigating cases, but the decisions regarding witnesses must be made in consultation with the defendant.").) This claim, like Grounds One and Two in the Amended Petition, relates to pretrial preparation. Indeed, Ground Seven is effectively duplicative of those claims insofar as it again asserts that counsel was ineffective for failing to confer with his client prior to trial. The facts in support of this claim are that counsel failed to investigate Joshua Ostein, a witness who was interviewed by Detective

Weaver and who contradicted statements made by Brian Moreland, and "other potential witnesses" whose testimony might have helped the petitioner. (Doc. No. 19, at 16.)

None of the claims in the *pro se* Petition relates to the pretrial phase of the criminal proceedings, and, again, *pro se* Ground Two is unsupported by sufficient facts to support the relation back of any other claim. Because Ground Seven does not relate back to any claim in the *pro se* Petition, it is untimely.

### 6. *Amended Ground Eight*

Amended Ground Eight and *Pro se* Ground One both state simply: "Sufficiency of [the] Evidence." (Doc. No. 1, at 6; Doc. No. 19, at 5.) Their similarity ends there. The petitioner alleges in the original Petition that the evidence was insufficient to support the verdict, because there was "[n]o underlying felony to support the felony murder conviction; no evidence accepted by the jury to support any underlying felony for a felony murder conviction." (Doc. No. 1, at 6.) The only specific fact alleged in the Amended Petition to support Ground Eight is that the Tennessee Court of Criminal Appeals improperly relied on "the problematic cell phone location data that should not have been introduced in Peoples' trial." (Doc. No. 19, at 17.)

These two claims differ in kind rather than merely in specificity, as they rely on entirely different facts introduced in support of the claim. Moreover, the sufficiency of the evidence claim as originally framed would not have provided notice to the government of an insufficiency claim based on the allegedly improper cell phone tower evidence. *Accord Salas v. Biter*, No. 1:15-cv-00831-JLT-EPG-HC, 2022 WL 16635377, at *5 (E.D. Cal. Nov. 2, 2022) (finding that the proposed first amended habeas petition, asserting that there was insufficient evidence to support the jury's finding of a felony-murder special enhancement, did not relate back to the claim in the original petition asserting that there was insufficient evidence to the support jury's finding of a

"gang-murder special circumstance" because it relied on different facts, and the original claim would not have put the government on notice of the amended claim).

The court finds that the sufficiency of the evidence claim, as raised in the Amended Petition, does not relate back to the sufficiency of the evidence claim raised in the original Petition.

### B.     Equitable Tolling of the Statute of Limitations

The untimely claims cannot be considered on the merits unless the petitioner can establish some basis for additional tolling of the statute of limitations. The Supreme Court has confirmed that the one-year statute of limitations set forth in § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Having found that all but three of the plaintiff's claims were filed outside the limitations period and do not relate back, the court must determine whether equitable tolling applies.

A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 4187 (2005)). Such "extraordinary circumstances" generally must be "circumstances beyond [the] litigant's control.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Id.* (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

In this case, Peoples contends that equitable tolling applies because (1) the court stayed the proceedings from 2015 until he moved to reopen the case in 2021, and Peoples reasonably believed he had complied with all filing deadlines during the stay; (2) the court granted his motion to amend the petition without any objection by the Warden; (3) it is unreasonable to expect Peoples to know that he would be required to file his amended petition within a year after the conclusion of his state

proceedings; (4) the petitioner diligently pursued his rights through the state appellate proceedings; and (5) the substantive merits of his claims "outweigh the Respondent's procedural objections." (Doc. No. 32, at 8.) In his *pro se* Supplemental Objections, the petitioner raises entirely new bases for tolling, including that his appellate counsel was battling severe illness from 2017 until his death in 2021, which caused him to miss the deadline for the filing of the petitioner's Rule 11 application to appeal the denial of his post-conviction petition to the Tennessee Supreme Court and further prevented him from filing an amended petition in this case by the applicable deadline. He claims that his family did not hire his current attorney until 2020, after his previous attorney's family informed him that the attorney would no longer be able to represent him. (Doc. No. 49-1, at 5–6.) Meanwhile, the prisons went on lockdown due to the COVID-19 pandemic in 2020, further complicating his ability to pursue his claims. (*Id.* at 6.)

Aside from the fact that the petitioner's *pro se* arguments for equitable tolling were raised for the first time in his Supplemental Objections to the R&R, meaning that they were effectively waived by not being presented to the Magistrate Judge, none of the petitioner's arguments, including those of counsel, is well taken. First, while the Sixth Circuit "has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update," *Keeling*, 673 F.3d at 463, Peoples does not actually allege that he relied on the assurances of counsel to delay filing his federal habeas petition. Moreover, the Sixth Circuit has never countenanced extended delays based on any such reliance, particularly in the absence of further inquiries by the petitioner. In *Keeling*, for example, the petitioner alleged that his attorney in the state proceedings had told him his appeal would take several years so he should "just be patient." *Id.* But then the petitioner "admit[ted] that he waited almost three years after the decision in his original appeal to the Ohio Court of Appeals before filing his first *pro se* post-conviction motion." *Id.* The court found this delay "excessive and inappropriate for the application of

equitable tolling," noting that it had "never granted equitable tolling to a petitioner who sat on his rights for a year and a half." *Id.* (quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)). Peoples, in this case, sat on his rights for at least three years.

Second, it is well established that a petitioner's "*pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Id.* at 464 (collecting cases). And the court's decision to grant a habeas petitioner's motion for leave to amend a petition does not "automatically render his . . . new claims timely." *Watkins II*, 57 F.4th at 579. Instead, "[t]heir timeliness presumptively depend[s] on whether [the petitioner] ha[s] filed the amendment within the one-year statute of limitations." *Id.*

Finally, while Peoples may have diligently pursued his claims in the state courts, the Sixth Circuit has indicated that the relevant inquiry is whether petitioner was diligent in pursuing federal habeas relief. *See, e.g.*, *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) ("Vroman's decision to proceed solely to the Ohio Supreme Court, rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence."). Here, even after receiving notice that his application for permission to appeal to the Tennessee Supreme Court had been dismissed as untimely in June 2018, meaning that his untimely appeal was not effective to continue tolling, Peoples waited nearly three more years from that date before filing his motion to reopen the case and file an amended petition. And only one of those years could even arguably be attributed to pandemic-related restrictions. The timeline in this case belies the petitioner's assertions that he diligently pursued his claims, and he fails to establish the existence of any other circumstances beyond his control that "stood in his way" and prevented timely filing. *Pace*, 544 U.S. at 418.

The petitioner is not entitled to equitable tolling. As a result, those claims in his Amended Petition that do not relate back to the claims in his original *pro se* Petition are time-barred and

cannot be considered on the merits. Grounds One, Two, Three, Seven, and Eight in the Amended Petition will be dismissed on this basis.

### C.     Procedural Default

As explained comprehensively in the R&R, a federal habeas court generally may consider a state prisoner's federal claim only if he exhausted that claim by first presenting it to the state court in accordance with state procedures. 28 U.S.C. § 2254(b)(1). "To fairly present a claim to a state court a petitioner must assert both the *legal* and factual basis for his or her claim." *Carter v. Mitchell*, 829 F.3d 455, 461 (6th Cir. 2016) (quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)). That means that the claims in the federal habeas petition "must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory." *Id.* (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). And the petitioner "must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Williams*, 460 F.3d at 806; *see also Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

When a claim has not been exhausted in the state court, "and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'" *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022). If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Shinn*, 596 U.S. at 371.

The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him[.]" *Coleman*, 501 U.S. at 753 (emphasis in

original)). The "existence of cause . . . ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Id.* (citation omitted). Examples of cause include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that, "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Here, it is clear that *pro se* Ground One (sufficiency of the evidence based on the lack of evidence of an underlying felony to support a felony murder conviction) is timely, and it was exhausted on direct appeal. *Peoples I*, 2012 WL 2356584, at *7. Amended Ground Four (also raised in *pro se* Ground Three) was raised in the petitioner's post-conviction appeal as a claim that counsel was ineffective for "utiliz[ing] the abandonment defense" and thus "conceding to an element of the crime and effectively denying [the Petitioner] the right to a fair trial," in violation of his constitutional rights. *Peoples II*, 2017 WL 65634, at *13, *12. This claim, too, is timely, and the state appellate court recognized that it was fully exhausted. *Id.* at *13.

The petitioner's other claims, if timely, were not fully exhausted. Specifically, although the petitioner raised claims in his post-conviction appeal that he was denied his fundamental right to "dispense with the services of trial counsel," in direct violation of his right to a fair trial under the Sixth Amendment (*pro se* Ground Four/amended Ground Five), that his trial attorney was ineffective for failing to hire a rebuttal cell phone technology expert (part of *pro se* Grounds

Three/part of amended Ground Six), and that his trial attorney was ineffective for failing to conduct a meaningful cross-examination of government witnesses, particularly Brian Moreland (Amended Ground Three), the Tennessee Court of Criminal Appeals declined to review these claims, because they had not been raised in the post-conviction petition or considered by the trial court. *See id.* at *12 ("We will not address issues raised for the first time on appeal."). He raised in his initial post-conviction petition claims related to his trial attorney's failure to investigate and call favorable witnesses at trial (arguably part of Amended Ground Seven), but he did not exhaust the claims by raising them on direct appeal. *Compare id.* at *5 and *12 (listing claims in initial petition and on appeal). Because these claims were not raised at every available level of state court review, they were not fully exhausted. *See Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review").[3] The petitioner did not even attempt to raise in his post-conviction proceedings the same claims as those asserted now in amended Ground Two (failure to adequately advise him about whether to testify) or amended Ground Eight (raising a sufficiency of the evidence claim based on the "problematic cell phone location data" (Doc. No. 19, at 17)).

The question, then, is whether the petitioner can overcome the procedural default of any of these claims in order to obtain review of them on the merits. Peoples asserts in his Reply brief that his trial counsel's "violations of Petitioner's Sixth Amendment rights were presented" in his state post-conviction proceedings, "but under the more common *Strickland v. Washington* standard." (Doc. No. 32, at 5 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).) He argues that the "ineffective assistance of appellate counsel in not arguing the appropriate *Cronic* analysis

---

[3] In Tennessee, a petitioner is not required to present claims to the Tennessee Supreme Court but is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

(presumption of prejudice) should not constitute a procedural[] default of these claims in the amended petition." (*Id.* (citing *United States v. Cronic*, 466 U.S. 648 (1984)).) In other words, he is attempting to rely on the ineffective assistance of post-conviction counsel as "cause" to excuse the procedural default, but only insofar as post-conviction counsel failed to argue that prejudice arising from trial counsel's failures should have been presumed under *Cronic*. (*See id.*; *see also* Doc. No. 46, at 15 ("To the extent that post-conviction attorney failed to raise the claims and the legal standards in the Amended Petition, particularly the standards outlined in *Cronic* for the manifest injustice of trial counsel's effective abandonment of Peoples, these claims should not be deemed defaulted.").) He also maintains that the "record below is clear," such that no evidentiary hearing is required. (Doc. No. 32, at 5–6.) In his Objections to the R&R, Peoples continues to maintain that he was "deprived of effective assistance of counsel before[,] during and after his trial, under both the *Strickland* and *Cronic* standards" and that the ineffective assistance of post-conviction counsel constitutes cause for the defaulted claims. (Doc. No. 46, at 2, 15, 16.)

The ineffective assistance of post-conviction counsel may, in limited circumstances, constitute "cause" to excuse the procedural default of claims of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 17, (2012); *Rogers v. Mays*, 69 F.4th 381, 395–96 (6th Cir. 2023), *cert. denied sub nom. Rogers v. Pounds*, 144 S. Ct. 830 (2024). As the Sixth Circuit has explained, to excuse a default on this basis,

> the habeas petitioner must make three showings. First, that the state either prohibits or makes it "virtually impossible" to raise ineffective-assistance-of-trial-counsel claims on direct appeal. Second, that the petitioner received ineffective assistance of counsel in the initial state post-conviction proceedings. Third, that the petitioner has a substantial claim that counsel rendered ineffective assistance at trial.

*Rogers*, 69 F.4th at 396 (internal citations omitted). With respect to the first element, the Sixth Circuit has recognized that Tennessee is a state that makes it virtually impossible to raise a claim of ineffective assistance of trial counsel on direct appeal. *Id.* at 396 n.3 (citing *Sutton v. Carpenter*,

745 F.3d 787, 790 (6th Cir. 2014)). Regarding the third, "[t]o be substantial, an ineffective-assistance-of-trial-counsel claim must, among other things, be supported by evidence." *Id.* at 396.

In the present case, Peoples does not actually argue that post-conviction counsel's failure to raise specific ineffective-assistance-of-trial-counsel claims constitutes cause to excuse the procedural default of those specific claims raised in this court or that those specific defaulted claims are sufficiently "substantial"—and supported by evidence in the record—that this court can nonetheless consider those claims. Instead, he is arguing that his post-conviction counsel was ineffective for not arguing as a general proposition that the ineffective assistance claims that he *did* raise were meritorious under *Cronic*, instead arguing that the *Strickland* standard applies.

Ineffective assistance claims may be reviewed under *Strickland* or under *Cronic*. *See Bell v. Cone*, 535 U.S. 685, 695 (2002). For a typical ineffective-assistance-of-counsel claim considered under *Strickland*, a habeas petitioner has the burden of demonstrating "both deficient performance and prejudice." *Moss v. Miniard*, 62 F.4th 1002, 1012 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1004 (2024); *see also Maslonka v. Hoffner*, 900 F.3d 269, 279 (6th Cir. 2018). A *Cronic* claim, on the other hand, arises when the defendant establishes the existence of circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Bell*, 535 U.S. at 695 (quoting *Cronic*, 466 U.S. at 658). Such circumstances arise only when (1) the defendant suffers the "complete denial of counsel" at "a critical stage"; (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Id.* at 695–96 (quoting or citing *Cronic*, 466 U.S. at 659–62).

Peoples appears to be attempting to argue, first, that his counsel effectively abandoned him during pretrial proceedings, because he did not visit him in jail prior to trial or adequately consult with him about trial strategy. The Sixth Circuit has clarified that a presumption of prejudice arises

based on an attorney's "absence" only when a state statute or a state actor affirmatively "den[ied] the physical presence of counsel during a critical stage or otherwise plac[ed] limits on counsel's representation of a criminal defendant." *Maslonka*, 900 F.3d at 279 (collecting cases). In this case, there is no evidence that Peoples' counsel was physically absent throughout an entire phase of the litigation or that a state actor prevented his counsel from adequately representing him. *See Maslonka* ("We therefore decline to extend the *Cronic* complete-denial exception to cases where a counsel is physically absent due to the counsel's own failure to be present, without any denial by the state."); *see also Moss*, 62 F.4th at 1005–06, 1012 (finding no "abandonment" during pretrial proceedings because there was "no evidence that [the petitioner's] counsel was physically absent throughout an entire phase of the litigation or that a state actor prevented [his] counsel from adequately representing him," even though trial counsel testified that he engaged in "minimal pre-trial preparation," had "difficulty obtaining discovery before [an entrapment] hearing," was unable to consult with his client's previous counsel or interview or solicit any witnesses, and his "pre-hearing actions consisted of meeting with [the petitioner] for two hours before the hearing, reviewing [his ]protected record, and persuading him to proceed with a bench trial on the day of the hearing"). The trial court in Peoples' case credited the evidence presented by the petitioner's attorney during the post-conviction hearing, in which he testified that, although he did not meet with his client at jail, he met with him each time they went to court, reviewed the state's evidence with him and discussed trial strategy, conveyed the state's plea offer to him, had his investigator visit the petitioner in jail, was aware of the state's evidence and summarized that evidence in a letter to his client, and made efforts to speak with the government's witnesses (most of whom were co-defendants who were represented by counsel). (*See* Doc. No. 25-12, at 29–31.) The petitioner, consequently, cannot show that he was completely abandoned by his attorney during pretrial proceedings.

Peoples also appears to be arguing that a presumption of prejudice is warranted, because his attorney's conduct was so woefully deficient that "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Bell*, 535 U.S. at 696. This claim is without merit, too, because Peoples cannot show that his attorney "entirely failed to subject the case to meaningful adversarial testing." *Bell*, 535 U.S. at 697. His attorney testified that he reviewed the state's evidence, attempted to contact witnesses, and was able to speak to their attorneys. The trial transcript reflects that he cross-examined the state's witnesses at trial. (*See* Trial Tr., Doc. Nos. 25-4, 25-5, 25-6.) These efforts, though ultimately unsuccessful, distinguish the case from *Mitchell v. Maso*n, 325 F.3d 732, 748 (6th Cir. 2003), for example, where defense counsel spent six minutes consulting with his client pre-trial, failed to conduct any pre-trial investigation, and was suspended from practicing law for the month preceding trial. For a presumption of prejudice to arise, "the "attorney's failure must be complete." *Bell*, 535 U.S. at 697. Even if counsel's performance in this case was deficient, his failures are properly considered under *Strickland*, not *Cronic*.

In other words, even if post-conviction counsel had argued to the post-conviction court that a presumption of prejudice arose from trial counsel's abandonment of his client and complete failure to subject the prosecution's case to meaningful adversarial testing, it is clear that such a claim would have been without merit. Because the argument would have been without merit, post-conviction counsel was not objectively unreasonable for failing to raise it, and Peoples cannot establish that the ineffectiveness of his post-conviction counsel in failing to argue the *Cronic* presumption of prejudice constitutes cause for the procedural default of any of his unexhausted claims.

Aside from this argument based on *Cronic*, Peoples does not make a case for excusing the procedural default of his claims. He has made no effort to establish that post-conviction counsel's decisions to raise some claims but not others amounts to deficient performance or to show that any

of the ineffective assistance claims he did *not* raise in the state proceedings (and that are now defaulted) amount to "substantial" claims. In sum, Peoples has not established that the procedural default of any of his claims should be excused. On this basis, amended Grounds Two, Three, Five (corresponding to *pro se* Ground Four), Six (corresponding in part to part of *pro se* Ground Three), Seven, and Eight and *pro se* Ground Two (which is so broad that it does not actually state a claim) are procedurally defaulted and cannot be considered on the merits, irrespective of whether they were (or were not) timely.[4]

### D.     The Timely, Exhausted Claims

Only two of the petitioner's claims are both timely and fully exhausted: (1) that the evidence was insufficient to support the verdict because there was no underlying felony to support the felony-murder conviction (*pro se* Ground One); and (2) that trial counsel was constitutionally ineffective, insofar as he unilaterally chose to pursue an abandonment defense," thereby conceding—in front of the jury—that petitioner was in an automobile near the crime" (*pro se* Ground Three (part) and amended Ground Four).[5]

---

[4] Amended Ground One, that counsel was ineffective for failing to meet with his client in the jail prior to trial, was arguably exhausted, *see Peoples II*, 2017 WL 65634, at *13, but not timely raised in this proceeding. *See supra* at p.15. The Tennessee Court of Criminal Appeals found that Peoples could not show prejudice arising from counsel's failure to meet with him at the jail, in light of counsel's credible testimony that he met with Peoples each time they went to court, reviewed the state's evidence with him, and discussed trial strategy. *Id.* Even if this claim were not defaulted, the court would find that it is without merit, as the petitioner has not shown that the state court's decision involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

[5] Under Tennessee law, "[i]t is an affirmative defense to a charge of criminal attempt . . . that the person, after committing the criminal attempt . . . prevented the successful commission of the offense attempted . . . under circumstances manifesting a complete and voluntary renunciation of the person's criminal purpose." *State v. Jackson*, 946 S.W.2d 329, 332 (Tenn. Crim. App. 1996) (quoting Tenn. Code Ann. § 39-12-104).

Regarding the court's review of those claims, it is well established that "[f]ederal habeas review 'intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority'" and that, "[a]s a result, habeas is 'an extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system.'" Thus, when a claim was adjudicated on the merits by the state court, a habeas petitioner is entitled to relief "only if the state court's decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court' or (2) 'was based on an unreasonable determination of the facts.'" *Rogers*, 69 F.4th at 389 (quoting 28 U.S.C. § 2254(d)). "A state-court decision is 'contrary to' clearly established federal law only if it (1) applies a rule that directly conflicts with a rule prescribed by the Supreme Court or (2) confronts a case with materially identical facts to a Supreme Court decision and decides the case differently." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court decision involves an unreasonable application of clearly established federal law "only if it applies Supreme Court precedent in a way that no fair-minded judge could accept." *Id.* (citing *Richter*, 562 U.S. at 102–03). And "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). That "[r]easonable minds reviewing the record might disagree" about the finding in question will not suffice for the habeas court to "supersede" the state court's determination. *Id.* (citation omitted).

In other words, section 2254 "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The standard is "difficult to meet . . . because it was meant to be." *Id.* at 20 (citations and internal quotation marks omitted).

*1.*      *Sufficiency of the Evidence*

The petitioner raised this claim on direct appeal, and the Tennessee Court of Criminal Appeals considered it on the merits, at length, and specifically addressed whether the evidence "was sufficient for the jury to determine that [Peoples] committed one of the underlying felonies required to convict [him] of first degree felony murder." *Peoples I*, 2012 WL 2356584, at *7. The state's theory was that he "committed the underlying felony of attempted aggravated robbery under the theory of criminal responsibility." *Id.* The state appellate court considered this question under the standard established by *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Peoples I*, 2012 WL 2356584, at *7.

And in analyzing the claim under this standard, the court articulated the required elements of the crime of attempted aggravated robbery under a theory of criminal responsibility, defining each of the relevant elements—robbery, aggravated, attempt, and criminal responsibility. *Id.* at *8. The court summarized the evidence, including Brian Moreland's testimony, the testimony of witnesses who saw Peoples' car close to the scene of the crime, the cell phone location records, and the testimony of Peoples' then-girlfriend, who recounted that Peoples told her the day after the shooting that he and three other men had "gone to Ace's Market the night before with the purpose of robbing it." *Id.* at *9. Based on all of this evidence, the court concluded that "the evidence presented at trial provided ample [proof that] the Defendant 'acted with the intent to promote or assist the commission' of the attempted aggravated robbery." *Id.* (quoting Tenn. Code Ann. § 39-11-402(2)).

The petitioner has made no substantive effort to show that the trial court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)). Peoples argues in his Supplemental Objections that the evidence cited by the state court was not sufficient because, as the petitioner himself testified at trial, "Petitioner's car was driven by someone else, Petitioner's phone was used by someone else at the time of [the] alleged robbery and shooting, and Petitioner did not tell [his then-girlfriend] that he and [the] other three [men] went to the store that evening with the purpose of robbing it," and, in any event, the ex-girlfriend's testimony was unreliable. (Doc. No. 49-1, at 22.) This court, however, cannot reweigh the facts or make determinations of credibility—that task was for the jury, who obviously chose to credit the ex-girlfriend's testimony and to discredit the petitioner's. In light of the state court's reference to the controlling federal standard and its consideration of the evidence in the record, the court cannot find that the decision was unreasonable. The evidence was clearly sufficient to support the verdict, and the petitioner is not entitled to relief on the basis of this issue.

### 2. *Trial Counsel's Pursuit of the Abandonment Defense*

The post-conviction court found, with respect to this issue, that trial counsel's testimony was credible, that trial counsel was effectively "hamstrung by Mr. Peoples' decision to perjure himself," and that the petitioner's complaints amounted to an "attempt[] to blame [trial counsel] for [Peoples'] refus[al] to heed counsel's advice after testifying to a version of facts rejected by the jury." (*See* Doc. No. 25-12, at 31–32.) The post-conviction court further credited the trial attorney's testimony that his client's version of events kept changing and that, in light of the state's evidence and Peoples' "perjured testimony," an alibi defense was not feasible, given the countervailing evidence and the alibi witness's lack of credibility, so the best possible avenue of defense was abandonment. (*Id.* at 34.) The trial court found, based on the proposed alibi evidence the petitioner presented during the post-conviction hearing, that Peoples could not prove either that

trial counsel's conduct was deficient or that Peoples was prejudiced by the deficiency. On review, the Tennessee Court of Criminal Appeals found that, even if counsel was deficient, the petitioner failed to prove prejudice and that the trial court did not err in finding that the petitioner failed to establish that his trial counsel was constitutionally ineffective. *Peoples II*, 2017 WL 65634, at *13.

In his Amended Petition, Peoples argues that his claim should not have been analyzed under the deficiency and prejudice standard set forth in *Strickland v. Washington* (or even *United States v. Cronic*) but, instead, analyzed as a structural error under *McCoy v. Louisiana*, 584 U.S. 414 (2018). The Magistrate Judge found that *McCoy* was not the law at the time of the petitioner's post-conviction proceedings and has not been applied retroactively and, even if it were meant to apply retroactively, would not apply in this case, because the petitioner's counsel's goal in pursuing an abandonment defense was to achieve an acquittal for his client. (*See* Doc. No. 34, at 37–38.) Peoples contends this was error, because *McCoy* did not articulate a new standard and because he and his attorney were not pursuing the same goals.

In *McCoy*, defense counsel, over his client's express objections, unambiguously conceded that his client was guilty of committing three murders, and his express objective in doing so was to "build credibility with the jury" and "obtain a sentence lesser than death." *McCoy*, 584 U.S. at 417, 425. The Supreme Court held in *McCoy* that the Sixth Amendment gives a defendant the right to insist that counsel refrain from admitting guilt over the defendant's objection, even when counsel believes that it is in the defendant's best interest to concede guilt to avoid a harsher sentence. *Id.* at 426. Moreover, it held that admitting guilt over the client's express objection is a "structural" error, insofar as it implicates a defendant's "autonomy, not counsel's competence," and, as such, it is not reviewed for its prejudicial effect under ordinary "ineffective-assistance-of-counsel jurisprudence" established by *Strickland* and *Cronic*. *Id.* at 427, 426. The right at issue is not designed to "protect the defendant from erroneous conviction" but instead is based in the

"fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Id.* at 427 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017)). In light of this structural error, the defendant was entitled to a new trial without being required to establish prejudice. *Id.* at 428.

Because *McCoy* was issued after Peoples' conviction and the denial of post-conviction relief became final, the state courts' failure to apply it was not contrary to, and did not involve an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court," as of the date of the state court decisions. 28 U.S.C. § 2254(d)(1). Moreover, those appellate courts that have considered the issue—including the Sixth Circuit, in an unpublished decision—have concluded that *McCoy* does not apply retroactively on collateral review. *See, e.g.*, *Pennebaker v. Rewerts*, No. 21-1216, 2021 WL 7237920, at *3 (6th Cir. Sept. 10, 2021) ("*McCoy* is not a new rule of constitutional law that applies retroactively."); *see also Kellogg-Roe v. Gerry*, 19 F.4th 21, 26 (1st Cir. 2021) ("*McCoy* added a new item to [the] list" of "[f]undamental decisions reserved to the client[.]"); *Smith v. Stein*, 982 F.3d 229, 233–4 (4th Cir. 2020) (holding that *McCoy* did not apply retroactively on collateral review or provide a basis for extending the § 2254 statute of limitations, because it was not a substantive rule and, even if it was a new procedural rule, it did not constitute a "watershed" rule); *Christian v. Thomas*, 982 F.3d 1215, 1222, 1225 (9th Cir. 2020) ("assum[ing] without deciding that *McCoy* did indeed create a new rule of constitutional law and that it was previously unavailable to [the petitioner]" but holding that "the Supreme Court has not made *McCoy v. Louisiana* retroactive to cases on collateral review").

Moreover, even if error based on *McCoy* were available to Peoples, it does not appear that his defense counsel's decision to argue abandonment during closing argument[6] would have

---

[6] The trial transcript in the record does not include a transcription of closing arguments, so it is unclear to the court what exactly counsel said—a fact further weighing against Peoples.

implicated *McCoy*, as there is no suggestion here that counsel conceded the defendant's *guilt*. Instead, he simply presented an affirmative defense based on abandonment or renunciation. *See* Tenn. Code Ann. § 39-12-104. His objective in arguing abandonment was clearly to obtain an acquittal for his client, not a reduced sentence based on juror sympathy as in *McCoy*. The Ninth Circuit, addressing a closely related argument, concluded that counsel's arguing self-defense as an alternative theory for acquittal, against his client's wishes, did not amount to a "*de facto* concession of guilt [that] deprived [the petitioner] of his right under *McCoy* to maintain innocence." *Christian*, 982 F.3d at 1225. In addition, as the Ninth Circuit explained, "*McCoy* makes clear that counsel does not interfere with the objective of the defense by arguing alternative theories if he does so in the pursuit of acquittal. While *McCoy* safeguards the client's authority to determine the 'objective of the defense,' the Supreme Court made sure to state that its holding did not displace counsel's trial management role, including in deciding 'what arguments to pursue.'" (*Id.* (internal citation omitted; quoting *McCoy*, 584 U.S. at 422).

In Peoples' case, as previously stated, the petitioner has failed to establish what, exactly, his attorney stated, but the state court noted that Peoples only argued that counsel conceded "an element of the offense" while arguing abandonment as a theory of acquittal, having determined that the jury was unlikely to credit the petitioner's testimony and his alibi defense. *Peoples II*, 2017 WL 65634, at *13. This court finds that, even if *McCoy* applied retroactively, it would not apply in this case, because counsel did not concede his client's guilt for the purpose of pursuing a lesser sentence but, instead, pursued abandonment as an alternative theory of acquittal.

The petitioner has not established a "structural" violation of the Sixth Amendment and is not entitled to relief on the merits of this claim.

*3.     Other Claims and Other Objections*

Any objections not expressly addressed herein are overruled as completely without merit or because they were not properly presented to the Magistrate Judge in the first instance. Moreover, the court has reviewed the record as a whole and finds that, even if the petitioner had properly exhausted the ineffective assistance claims addressed by the Tennessee Court of Criminal Appeals, he has not shown either that the state court applied an incorrect legal standard in considering, under *Strickland*, whether the petitioner could prove both attorney performance "falling below an objective standard of reasonableness" and that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 363 (2000). In short, even if the court were able to reach the merits of the petitioner's ineffective assistance of counsel claims, the state courts' determination that Peoples was not prejudiced by any alleged errors, based on the evidence presented at the post-conviction hearing, was imminently reasonable, and the petitioner would not be entitled to relief.

## V.     CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A petitioner may not appeal the denial of a habeas petition unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, to warrant the grant of a certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 326 (2003).

Where the court denies relief on procedural grounds without reaching the merits of a particular claim, a petitioner seeking a certificate of appealability must demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The court finds in this case that jurists of reason would not disagree that the vast majority of the petitioner's claims are time-barred, were not fully exhausted in the state courts and are therefore procedurally defaulted, or both. With respect to the two claims that the court can review on the merits, the question of whether the denial of relief by the state court violated the petitioner's constitutional rights does not present a close question. The court will decline to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons set forth herein, the petitioner's Objections—both *pro se* and through counsel (Doc. Nos. 46 and 49-1) will be overruled, and the government's Objections (Doc. No. 45) will be granted, even though they make no difference in the outcome of this case. The court will accept the R&R's recommendation that the petition for habeas relief be denied, and this case will be dismissed with prejudice, without issuance of a certificate of appealability.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge